## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-23142-CIV-SINGHAL/Damian

MARIA NOGARA,                          |
                                       |
      Plaintiff,                        |
                                       |
v.                                     |
                                       |
LYNN LAW OFFICE, P.C. et al.,          |
                                       |
      Defendants.                       |
_____|


## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Eduardo A. Maura, Esq.
Florida Bar No. 91303
eduardo@ayalalawpa.com
Luis F. Quesada, Esq.
Florida Bar No. 1010305
lquesada@ayalalawpa.com
Ryan M. Sawal, Esq.
Florida Bar No. 1038500
rsawal@ayalalawpa.com
**Ayala Law, P.A.**
2490 Coral Way, Ste 401
Miami, FL 33145
P: (305) 570-2208
F: (305) 503-7206
*Counsel for Plaintiff Maria Nogara*

## <u>TABLE OF CONTENTS</u>

**BACKGROUND** ---------------------------------------------------------------------------------1

**LEGAL STANDARD** ----------------------------------------------------------------------------3

**ARGUMENT** ------------------------------------------------------------------------------------3

**I.**   **Plaintiff Is Entitled to Summary Judgment on Count I for Legal Malpractice.** ---------3

**II.**   **Plaintiff Is Entitled to Summary Judgment on Count II for Vicarious Liability.** --------6

**III.**   **Plaintiff Is Entitled to Summary Judgment on Defendants' Affirmative Defenses.** ------8

    a.   First Affirmative Defense -----------------------------------------------------------------8

    b.   Second Affirmative Defense -------------------------------------------------------------- 10

    c.   Third Affirmative Defense----------------------------------------------------------------- 12

    d.   Fourth Affirmative Defense -------------------------------------------------------------- 13

    e.   Fifth Affirmative Defense ---------------------------------------------------------------- 15

    **CONCLUSION**------------------------------------------------------------------------------------ **17**

## TABLE OF CITATIONS

### CASES

*Alley v. Miramon*,
614 F.2d 1372 (5th Cir. 1980) -------------------------------------------------------------------7

*Am. Red Cross v. Estate of Haynsworth*,
708 So. 2d 602 (Fla. Dist. Ct. App. 1998) ---------------------------------------------- 16

*Arnold v. Carmichael*,
524 So. 2d 464 (Fla. Dist. Ct. App. 1988) -----------------------------------------------4

*Bartlett v. Heibl*,
128 F.3d 497 (7th Cir. 1997)-------------------------------------------------------------7

*Brucker v. City of Doraville*,
38 F.4th 876 (11th Cir. 2022) -----------------------------------------------------------3

*Butler v. Williams*,
141 So. 2d 4 (Fla. Dist. Ct. App. 1962) ------------------------------------------------ 16

*Chapman v. Campbell*,
119 So. 2d 61 (Fla. Dist. Ct. App. 1960) ----------------------------------------------- 17

*Coppock v. Carlson*,
547 So. 2d 946 (Fla. Dist. Ct. App. 1989) --------------------------------------------- 16

*Cordoba v. Dillard's, Inc.*,
419 F.3d 1169 (11th Cir. 2005) --------------------------------------------------------- 15

*Dennis v. Kline*,
120 So. 3d 11 (Fla. Dist. Ct. App. 2013) -----------------------------------------------9

*Dingle v. Dellinger*,
134 So. 3d 484 (Fla. Dist. Ct. App. 2014) --------------------------------------------4, 7

*Ellerson v. Moriarty*,
331 So. 3d 767 (Fla. Dist. Ct. App. 2021) -----------------------------------------------4

*Gables Ins. Recovery, Inc. v. Citizens Prop. Ins. Corp.*,
261 So. 3d 613 (Fla. Dist. Ct. App. 2018) -----------------------------------------------9

*Greenwood v. Flohl (In re Estate of Flohl)*,
764 So. 2d 802 (Fla. Dist. Ct. App. 2000) --------------------------------------------- 15

*Hall v. Hall*,
190 So. 3d 683 (Fla. Dist. Ct. App. 2016) -------------------------------------------------------------- 15

*Hendershaw v. Estate of Hendershaw*,
763 So. 2d 482 (Fla. Dist. Ct. App. 2000) -------------------------------------------------------------- 16

*Honig v. Kornfeld*,
339 F. Supp. 3d 1323 (S.D. Fla. 2018) -------------------------------------------------------------- 7

*Jackson v. BellSouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004) -------------------------------------------------------------- 4

*Jervis v. Tucker*,
82 So. 3d 126 (Fla. Dist. Ct. App. 2012) -------------------------------------------------------------- 15

*Kaplan v. Bayer*,
782 So. 2d 417 (Fla. Dist. Ct. App. 2001) -------------------------------------------------------------- 8

*Kelly v. Lindenau*,
223 So. 3d 1074 (Fla. Dist. Ct. App. 2017) -------------------------------------------------------------- 5, 10

*Knepfle v. J-Tech Corp.*,
48 F.4th 1282 (11th Cir. 2022) -------------------------------------------------------------- 12

*LaTele TV, C.A. v. Telemundo Communs. Grp., LLC*,
9 F.4th 1349 (11th Cir. 2021) -------------------------------------------------------------- 7

*Lorraine v. Grover, Ciment, Weinstein & Stauber, P.A.*,
467 So. 2d 315 (Fla. Dist. Ct. App. 1985) -------------------------------------------------------------- 4

*Lucas Games Inc. v. Morris AR Assocs., LLC*,
197 So. 3d 1183 (Fla. Dist. Ct. App. 2016) -------------------------------------------------------------- 9

*Michael E. Greene, P.A. v. Leasing Assocs.*,
935 So. 2d 21 (Fla. Dist. Ct. App. 2006) -------------------------------------------------------------- 12

*Miller v. Flowers*,
27 So. 2d 667 (Fla. 1946) -------------------------------------------------------------- 17

*Mitrani v. Druckman*,
576 So. 2d 406 (Fla. Dist. Ct. App. 1991) -------------------------------------------------------------- 11

*Passell v. Watts*,
794 So. 2d 651 (Fla. Dist. Ct. App. 2001) -------------------------------------------------------------- 4

*Raimi v. Furlong*,
702 So. 2d 1273 (Fla. Dist. Ct. App. 1997) ------------------------------------------------------- 16

*Sotolongo v. Ethicon, Inc.*,
591 F. Supp. 3d 1242 (S.D. Fla. 2022) --------------------------------------------------------------3

*Swiss v. Flanagan*,
329 So. 3d 199 (Fla. Dist. Ct. App. 2021) ------------------------------------------------------- 13

*Tarleton v. Arnstein & Lehr*,
719 So. 2d 325 (Fla. Dist. Ct. App. 1998) ------------------------------------------------------- 13

*Tarsagian v. Watt*,
402 So. 2d 471 (Fla. Dist. Ct. App. 1981) ------------------------------------------------------- 15

*Vasconcelo v. Miami Auto Max, Inc.*,
981 F.3d 934 (11th Cir. 2020) -----------------------------------------------------------------------8

*Victor Elias Photography, LLC v. ICE Portal, Inc.*,
43 F.4th 1313 (11th Cir. 2022)----------------------------------------------------------------------3

*Watts v. Goetz*,
311 So. 3d 253 (Fla. Dist. Ct. App. 2020) ------------------------------------------------------- 12

*York v. Smith*,
385 So. 2d 1110 (Fla. Dist. Ct. App. 1980) ----------------------------------------------------- 16

*Zinn v. United States*,
835 F. Supp. 2d 1280 (S.D. Fla. 2011) ----------------------------------------------------------- 11

*Zoldan v. Zohlman*,
915 So. 2d 235 (Fla. Dist. Ct. App. 2005) ------------------------------------------------------- 15

S<small>TATUTES</small>

Fla. Stat. § 736.0105 -------------------------------------------------------------------------------- 9, 10

Fla. Stat. § 736.0107 --------------------------------------------------------------------------------------9

Fla. Stat. § 736.0403 -------------------------------------------------------------------------------- 5, 10

R<small>ULES</small>

Fed. R. Civ. P. 56 ------------------------------------------------------------------------------------------3

Plaintiff Maria Nogara, through the undersigned counsel and pursuant to Fed. R. Civ. P. 56, moves for summary judgment against Defendants Lynn Law Office, P.C. f/k/a Lynn and Stein, P.C. (the "Law Office") and Joel K. Stein ("Stein"), and in support thereof states:

## BACKGROUND

On October 12, 2001, Carl R. Doran ("Doran") created the Carl R. Doran Living Trust. (SOMF, ¶ 1).[1] In 2009 or 2010, Doran began living in Florida for months at a time. (SOMF, ¶ 2). Doran resided in Florida most of the time. (SOMF, ¶ 2). On December 9, 2014, Doran restated the trust agreement in its entirety in the First Restatement of the Carl R. Doran Living Trust Agreement ("First Restatement"), which was executed in Florida. (SOMF, ¶ 3). On June 20, 2017, Doran first amended the trust agreement by executing the First Amendment to the First Restatement. (SOMF, ¶ 4). In this First Amendment to the First Restatement, Doran provided "five percent (5%) of the Grantor's remaining gross estate shall be given to Grantor's friend Maria Norgara [*sic*] of Miami Beach Florida, free of trust." (SOMF, ¶ 5).

In November 2019, Doran retained the Law Office to draft the Second Restatement of the Carl R. Doran Living Trust Agreement (the "Second Restatement"). (SOMF, ¶ 6). Within the Law Office, Stein was the attorney who handled the matter of the Second Restatement. (SOMF, ¶ 7). On November 2, 2019, Doran requested that Stein send the Second Restatement to his residence in Florida for execution. (SOMF, ¶ 8). Doran asked Stein to "[p]lease mark where dates as well as signatures go so I don't screw anything up." (SOMF, ¶ 8). On November 4, 2019, Stein sent the Second Restatement to Doran's residence in Florida for execution. (SOMF, ¶ 9). On November 5, 2019, Doran executed the Second Restatement in Florida. (SOMF, ¶ 10). Doran's intent, as it was

---

[1] "SOMF" refers to the Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment [ECF No. 37].

expressed in the Second Restatement, was to disinherit his children and for Plaintiff to receive 50% of his trust estate. (SOMF, ¶¶ 12-13).

Around November 7, 2019, while he was admitted at Mount Sinai Medical Center, Doran's doctors found that Doran was negative for "depression, suicidal ideas, hallucinations, memory loss and substance abuse," and he was not anxious, confused, or agitated. (SOMF, ¶ 14). The doctors at Mount Sinai Medical Center also found "no neurological deficit" in Doran, stating that he was "alert and oriented to place, person and time." (SOMF, ¶ 15). Around December 24, 2019, while he was again admitted at Mount Sinai Medical Center, Doran's doctors found that he was "awake, alert and oriented," and not depressed, anxious, confused, or agitated. (SOMF, ¶ 17).

Around December 2019, Doran retained the Law Office to draft a Third Restatement of the Carl R. Doran Living Trust Agreement (the "Third Restatement"). (SOMF, ¶ 18). Within the Law Office, Stein was the attorney who handled the matter of the Third Restatement. (SOMF, ¶ 19). On December 30, 2019, Doran executed the Third Restatement, also in Florida. (SOMF, ¶ 20). Doran's intent, as expressed in the Third Restatement, was again to disinherit his children and for Plaintiff to now receive 100% of his trust estate. (SOMF, ¶¶ 22-23).

Doran died on February 1, 2020. (SOMF, ¶ 24). At the time of his death, Doran resided at 2625 Collins Ave, Apt 806, Miami Beach, FL 33140. (SOMF, ¶ 25). On February 9, 2021, Amy Lucker ("Lucker"), a daughter of Doran, sued Plaintiff in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, claiming the Second and Third Restatements were invalid. (SOMF, ¶ 26). On November 15, 2021, Lucker filed a motion for summary judgement, arguing the Second and Third Restatements were invalid because they were not executed with the formalities required by Florida law. (SOMF, ¶ 27). On March 28, 2022, the state court granted summary judgment in favor of Lucker and against Plaintiff. (SOMF, ¶ 28). In its Order, the state court found the Second

and Third Restatements were "signed without subscribing witnesses, which is insufficient to create a valid trust under Florida law." (SOMF, ¶ 29). Because the Third Restatement was found to be improperly executed, Plaintiff did not receive 100% of Doran's trust estate, as intended by Doran. (SOMF, ¶ 30). As of August 31, 2022, the Carl R. Doran Living Trust was worth $8,904,067.50. (SOMF, ¶ 31).

## LEGAL STANDARD

Under Rule 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Sotolongo v. Ethicon, Inc.*, 591 F. Supp. 3d 1242, 1248 (S.D. Fla. 2022). "A fact is 'material' only if it has the potential to affect the outcome of the case, and a dispute is 'genuine' only if a reasonable jury could return a verdict for the non-moving party." *Victor Elias Photography, LLC v. ICE Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022). "If no reasonable jury could return a verdict in favor of the non-moving party, there is no genuine issue of material fact and summary judgment will be granted." *Brucker v. City of Doraville*, 38 F.4th 876 (11th Cir. 2022).

## ARGUMENT

**I.      Plaintiff Is Entitled to Summary Judgment on Count I for Legal Malpractice.**

In Count I of her Complaint, Plaintiff brings a claim for legal malpractice against Stein due to a failure to comply with the statutory requirements to create a valid trust under Florida law. *See* ECF No. 1, ¶¶ 26-36. To prevail on a claim for legal malpractice under Florida law, a plaintiff must generally demonstrate: "(1) that the defendant attorney was employed by the plaintiff; (2) that the

defendant attorney neglected a reasonable duty owed to the plaintiff; and (3) that such negligence was the proximate cause of loss to the plaintiff." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1281 (11th Cir. 2004).

There is no genuine dispute Defendants were employed by Doran to draft the Second and Third Restatements. (SOMF, ¶¶ 6-7, 18-19). "An attorney's liability for professional negligence is generally limited to clients with whom the attorney shares privity of contract." *Dingle v. Dellinger*, 134 So. 3d 484, 487 (Fla. Dist. Ct. App. 2014). It is undisputed that Plaintiff was not in privity of contract with Stein. However, "Florida courts have recognized a limited exception to the privity requirement to allow intended testamentary beneficiaries under certain circumstances to maintain malpractice actions against attorneys." *Ellerson v. Moriarty*, 331 So. 3d 767, 770 (Fla. Dist. Ct. App. 2021). As explained by one court:

> When an attorney undertakes to fulfill the testamentary instructions of his client, he realistically and in fact assumes a relationship not only with the client but also with the client's intended beneficiaries. The attorney's actions and omissions will affect the success of the client's testamentary scheme; and thus the possibility of thwarting the testator's wishes immediately becomes foreseeable. Equally foreseeable is the possibility of injury to an intended beneficiary. In some ways, the beneficiary's interests loom greater than those of the client. After the latter's death, a failure in his testamentary scheme works no practical effect except to deprive his intended beneficiaries of the intended bequests.

*Arnold v. Carmichael*, 524 So. 2d 464, 466 (Fla. Dist. Ct. App. 1988).

Intended third-party beneficiaries may bring an action for legal malpractice if they are able to show "the testator's intent as expressed in the will is frustrated by the negligence of the testator's attorney." *Passell v. Watts*, 794 So. 2d 651, 652 (Fla. Dist. Ct. App. 2001). In particular, an attorney will be liable to an intended beneficiary "if the attorney's negligence in drafting the will ***or having it properly executed*** directly results in the plaintiff-beneficiary's loss." *Lorraine v. Grover, Ciment, Weinstein & Stauber, P.A.*, 467 So. 2d 315, 318 (Fla. Dist. Ct. App. 1985) (emphasis added). Here,

4

there is no genuine dispute Stein's negligence in drafting the Second and Third Restatements and having them properly executed directly resulted in Plaintiff's loss.

At some point before November 2, 2019, Stein drafted the Second Restatement. (SOMF, ¶¶ 6-7). On November 2, 2019, Doran asked Stein to send the Second Restatement to his residence in Florida for execution, and "[p]lease mark where dates as well as signatures go so I don't screw anything up." (SOMF, ¶ 8). On November 4, 2019, Stein sent the Second Restatement to Doran's residence in Florida for execution. (SOMF, ¶ 9). Although the Second Restatement was executed in Florida, Stein testified he did not research Florida law on trusts. *See* ECF No. 37-2, 86:17-24.

In Florida, the testamentary aspects of a revocable trust, executed by a settlor domiciled in this state at the time of execution, are invalid "unless the trust instrument is executed by the settlor with the formalities required for the execution of a will in this state." Fla. Stat. § 736.0403(2)(b). "Consequently, a trust—or an amendment thereto—must be signed by the settlor in the presence of two attesting witnesses and those witnesses must also sign the trust or any amendments in the presence of the settlor and of each other." *Kelly v. Lindenau*, 223 So. 3d 1074, 1076 (Fla. Dist. Ct. App. 2017). If a settlor "fails to strictly comply with the statutory requirements for valid execution of the relevant document, the document remains invalid and unenforceable." *Id.* at 1077.

Despite these statutory requirements, Stein did not include lines in the Second Restatement for two attesting witnesses to sign. *See* ECF No. 1-3, p.26. On November 5, 2019, Doran executed the Second Restatement in Florida. (SOMF, ¶ 10). Doran's intent, as it was expressed in the Second Restatement, was for Plaintiff to receive half of his trust estate. (SOMF, ¶ 13). Afterward, at some point before December 30, 2019, Stein drafted the Third Restatement. (SOMF, ¶¶ 18-19). Again, despite Florida's statutory requirements, Stein failed to include lines in the Third Restatement for two attesting witnesses to sign. *See* ECF No. 1-4, p.26. On December 30, 2019, Doran executed

the Third Restatement in Florida. (SOMF, ¶ 20). Doran's intent, as it was expressed in the Third Restatement, was for Plaintiff to now receive 100% of his trust estate. (SOMF, ¶ 23).

Doran died on February 1, 2020. (SOMF, ¶ 24). On February 9, 2021, Lucker sued Plaintiff, claiming the Second and Third Restatements were invalid. (SOMF, ¶ 26). On November 15, 2021, Lucker filed a motion for summary judgement, arguing the Second and Third Restatements were invalid since they were not executed with the formalities required by Florida law. (SOMF, ¶ 27). On March 28, 2022, the state court granted summary judgment in favor of Lucker, finding that the Second and Third Restatements were "signed without subscribing witnesses, which is insufficient to create a valid trust under Florida law." (SOMF, ¶¶ 28-29). Because the Third Restatement was found to be improperly executed, Plaintiff did not receive 100% of Doran's trust estate, as intended by Doran. (SOMF, ¶ 30).

As evidenced by the record, there is no genuine dispute in this matter that: (i) Plaintiff was an intended beneficiary of the Second and Third Restatements; (ii) Stein was negligent in drafting and having the Second and Third Restatements properly executed; (iii) Doran's intent, as expressed in the Second and Third Restatements, was frustrated by Stein's negligence; and (iv) as a proximate cause of Stein's negligence, Plaintiff was damaged. Consequently, Plaintiff is entitled to judgment as a matter of law on her claim for legal malpractice against Stein.

## II.    Plaintiff Is Entitled to Summary Judgment on Count II for Vicarious Liability.

In Count II of her Complaint, Plaintiff brings a claim for legal malpractice against the Law Office under a theory of vicarious liability/respondeat superior due to Stein's negligence in drafting and having the Second and Third Restatements properly executed under Florida law. *See* ECF No. 1, ¶¶ 37-45. To hold a principal liable for the negligence of an agent, "a plaintiff must sufficiently allege the elements of agency in addition to the elements of the underlying negligent act of the

agent for which the plaintiff seeks to hold the principal liable." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1348 (S.D. Fla. 2018). Naturally, Plaintiff's claim against the Law Office depends upon the legal malpractice claim against Stein. *See Dingle*, 134 So. 3d at 492. As explained above, Plaintiff is entitled to judgment as a matter of law on her claim for legal malpractice against Stein.

Moreover, there is no genuine dispute as to whether Stein was an agent of the Law Firm. It is undisputed the Law Office is a corporation. *See* ECF No. 21, ¶ 2. "A corporation is an artificial entity that can only act through its officers, agents, and employees." *LaTele TV, C.A. v. Telemundo Communs. Grp., LLC*, 9 F.4th 1349, 1357 (11th Cir. 2021). If a lawyer is "sued for conduct within the scope of his agency or employment as a partner or an associate of a law firm," the law firm may be "named along with him as a defendant, because it would be liable jointly with him for that conduct." *Bartlett v. Heibl*, 128 F.3d 497, 499-500 (7th Cir. 1997). Stein testified that in 2005 he created the Law Office, which was then called "Lynn and Stein, P.C."[2] *See* ECF No. 37-2, 13:6-11. Stein testified he was a partner at the Law Office from 2005 until 2020. *See id.*, 13:12-17. Stein testified he drafted the Second Restatement on behalf of the Law Office. *See id.*, 23:21-24:1. Stein testified that he also drafted the Third Restatement on behalf of the Law Office. *See id.*, 34:21-35:2.

As evidenced by the record, there is no genuine dispute here that when Stein was negligent in drafting and having the Second and Third Restatements properly executed, he was acting within the scope of his agency as a partner of the Law Office. Accordingly, Plaintiff is entitled to judgment as a matter of law on her claim for legal malpractice under a theory of vicarious liability/respondeat superior against the Law Office.

---

[2] On December 20, 2019, the Law Office changed its name from "Lynn and Stein, P.C." to "Lynn Law Office, P.C." (SOMF, ¶ 16). However, "[t]he change of a corporation's name is not a change of the identity of a corporation and has no effect on the corporation's property, rights, or liabilities." *Alley v. Miramon*, 614 F.2d 1372, 1384 (5th Cir. 1980). In any case, the name change was effective January 1, 2020, after the events giving rise to liability in this case took place. (SOMF, ¶¶ 16, 20).

### III.     Plaintiff Is Entitled to Summary Judgment on Defendants' Affirmative Defenses.

a.    <u>First Affirmative Defense</u>

In their First Affirmative Defense, Defendants allege "Plaintiff has failed to state a cause of action for professional negligence and vicarious liability because the Complaint, and its exhibits, contradict any allegation of professional negligence." ECF No. 21, p.6. In particular, Defendants claim that Article 7.6.2 of the Restatements provides their "validity, construction and any questions concerning [their] amendment or revocation shall be governed by the laws of the State of Indiana." *Id.* However, as shown below, Defendants' First Affirmative Defense is legally insufficient.

First, Section 7.6.2 is part of Article 7, "Provisions Re: Trustee and Successor Trustee." A plain reading of the text of Article 7 reflects that it relates to powers, duties, or limitations on the acts of trustees. It is undisputed in this case that Defendants were not trustees or successor trustees of Doran's trust. Even assuming that Section 7.6.2 was meant to apply to the Restatements in their entirety, rather than only Article 7, Section 11.2 of the Restatements provides the documents "shall be construed and administered, and the validity of the trusts hereby created shall be determined, in accordance with the laws of the state in which it is executed." (SOMF, ¶¶ 11, 21). It is undisputed the Restatements were executed in Florida. (SOMF, ¶¶ 10, 20). Therefore, pursuant to Section 11.2 of the Restatements, Florida law—not Indiana law—governs their validity and construction.

Undeniably, if we assume that Section 7.6.2 applies to the entire document, the Second and Third Restatements would be ambiguous with regard to what law governs. *Cf. Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 943 (11th Cir. 2020) (finding that contract is ambiguous when "it is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract"). In such a case, the instrument must be interpreted in a manner so as to "reconcile the conflicting provisions." *Kaplan v. Bayer*, 782 So. 2d 417, 419 (Fla. Dist. Ct. App. 2001). If

reconciliation is not possible, the Court "must give the agreement a reasonable interpretation." *Id.* Here, reconciliation is not possible since either Indiana or Florida law must govern. It is well settled that "absent any provision to the contrary, where a trust is created and executed in Florida, the law presumes the settlor expected Florida law to apply." *Dennis v. Kline*, 120 So. 3d 11, 21 (Fla. Dist. Ct. App. 2013). Again, it is undisputed the Restatements were executed in Florida. (SOMF, ¶¶ 10, 20). Given the conflicting governing law provisions in the Restatements, and the presumption that Florida law applies to trusts executed in Florida, a reasonable interpretation of the Restatements is that Florida law governs their validity and construction.

Even if the Court found that Section 7.6.2 of the Restatements trumped Section 11.2, and Indiana law governed, Defendants were still required to comply with the statutory requirements to create a trust that was enforceable in Florida. "[A]n agreement that is violative of a provision of a . . . valid statute, or an agreement which cannot be performed without violating such a . . . statutory provision, is illegal and void." *Gables Ins. Recovery, Inc. v. Citizens Prop. Ins. Corp.*, 261 So. 3d 613, 624 (Fla. Dist. Ct. App. 2018). Such an instrument "will not be enforced in our courts." *Lucas Games Inc. v. Morris AR Assocs., LLC*, 197 So. 3d 1183, 1184 (Fla. Dist. Ct. App. 2016). Relevant here is Fla. Stat. § 736.0107, which provides that a designation of governing law in a trust "is not controlling as to any matter for which the designation would be contrary to a strong public policy of this state." Fla. Stat. § 736.0107.

Florida's public policy regarding terms of a trust can be gleaned from Fla. Stat. § 736.0105, which provides in pertinent part that "[t]he terms of a trust prevail over any provision of this code *except* . . . [t]he formalities required under s. 736.0403(2) for the execution of a trust." Fla. Stat. § 736.0105(2)(i) (emphasis added). Thus, even if Indiana law governed pursuant to Section 7.6.2, said designation is not controlling as far as execution of the Restatements is concerned. Florida's

public policy required the Restatements to be "executed by the settlor with the formalities required for the execution of a will in this state." Fla. Stat. § 736.0403(2)(b). As found by the state court, it is undisputed the Restatements were "signed without subscribing witnesses, which is insufficient to create a valid trust under Florida law." (SOMF, ¶ 29).

Defendants also argue that Article 10.2 of the Restatements gave Doran "the power to alter, amend, and revoke this agreement, in whole or in part" and that Article 10.3 of the Restatements provided "any revocation, alteration, or amendment shall be by instrument in writing executed by the party taking such action, and the same shall be effective immediately without the consent or approval of any other person." ECF No. 21, p.6. To the extent Defendants seem to argue that the Restatements could be amended without complying with Florida law, this argument is defeated for the same reasons detailed above. Any provision in the Restatements allowing a party to disregard [t]he formalities required under s. 736.0403(2) for the execution of a trust," would be void and not enforceable. Fla. Stat. § 736.0105(2)(i). Consequently, the Restatements had to be signed by Doran in the presence of two attesting witnesses. *See Kelly*, 223 So. 3d at 1076.

In short, there is no genuine dispute in this matter that: (i) the Restatements were governed by Florida law; (ii) even if Indiana law governed, the Restatements had to comply with Florida's statutory requirements for the execution of trusts; and (iii) the Restatements did not comply with the formalities of Fla. Stat. § 736.0403(2). Accordingly, Defendants' First Affirmative Defense is factually refuted by the record and is legally insufficient. Thus, Plaintiff is entitled to judgment as a matter of law on Defendants' First Affirmative Defense.

b.  Second Affirmative Defense

In their Second Affirmative Defense, Defendants claim Plaintiff's damages "were solely or partially the result of professional negligence on the part of Alexander M. Turner, Esq." ECF No.

21, p.6. Defendants also assert Plaintiff's damages were solely or partially the result of professional negligence on the part of Sergio J. Guzman, Esq. *See id.*, p.7. According to Defendants, Messrs. Turner and Guzman "failed to adequately defend Plaintiff's interests . . . by failing to raise all legal arguments and defenses available to her." *Id.*, p.7. Specifically, Defendants contend Messrs. Turner and Guzman should have argued "Indiana law governed the Carl R. Doran Living Trust," and had the Underlying Litigation and Probate Proceedings "dismissed or adjudicated by Indiana courts." *Id.* However, as explained above, Indiana law did not govern the validity and construction of the Restatements, and even if it did, the Restatements were nonetheless still required to comply with Florida's statutory requirements for the execution of trusts. Therefore, even if Messrs. Turner and Guzman had made this argument in the Underlying Litigation and Probate Proceedings, the result would have been the same, i.e., the state court would have granted summary judgment in favor of Lucker and against Plaintiff, because the Restatements were signed without subscribing witnesses, which is insufficient to create a valid trust in Florida.

Normally, "once a negligent act occurs, the actor will be liable for injury flowing therefrom, unless an act unforeseeable to him and independent of his negligence intervenes to cause the loss." *Mitrani v. Druckman*, 576 So. 2d 406, 408 (Fla. Dist. Ct. App. 1991). Under Florida law, a separate act is an intervening cause "only when it is completely independent of, and not in any way set in motion by, the tortfeasor's negligence." *Zinn v. United States*, 835 F. Supp. 2d 1280, 1318 (S.D. Fla. 2011). Any alleged inability of Messrs. Turner and Guzman to successfully defend Plaintiff in the Underlying Litigation and Probate Proceedings was not independent of, but rather caused by, Defendants' failure to ensure the Restatements were executed according to Florida law. Defendants can present no evidence to the contrary. Consequently, Plaintiff is entitled to judgment as a matter of law on Defendants' Second Affirmative Defense. *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1297

(11th Cir. 2022) (party moving for summary judgment may satisfy its burden "by establishing that there is an absence of evidence to support the nonmoving party's case").

    c.  <u>Third Affirmative Defense</u>

In their Third Affirmative Defense, Defendants argue "Plaintiff's claims are barred in whole or in part by Plaintiff's own comparative negligence" as a result of her "failure to properly defend herself and raise all legal arguments and defenses available to her in the Underlying Litigation and Probate Proceedings." ECF No. 21, p.7. Specifically, Defendants contend that Plaintiff should have argued "Indiana law governed the Carl R. Doran Living Trust," and had the Underlying Litigation and Probate Proceedings "dismissed or adjudicated by Indiana courts." *Id.* Similar to Defendants' Second Affirmative Defense, this defense fails because Indiana law did not govern the validity and construction of the Restatements, and even if it did, the Restatements were still required to comply with Florida's statutory requirements for the execution of trusts. Accordingly, even if Plaintiff had made this argument in the Underlying Litigation and Probate Proceedings, the result would have been the same, i.e., the state court would have granted summary judgment in favor of Lucker and against Plaintiff, because the Restatements were signed without subscribing witnesses, which is insufficient to create a valid trust in Florida.

Defendants' Third Affirmative Defense is also defeated by the fact Plaintiff was represented by counsel in the underlying cases. "Once a client retains an attorney, a client cannot be found to be comparatively negligent for relying on an attorney's erroneous legal advice or failing to correct errors of the attorney which involve the exercise of professional expertise." *Watts v. Goetz*, 311 So. 3d 253, 262 (Fla. Dist. Ct. App. 2020); *Michael E. Greene, P.A. v. Leasing Assocs.*, 935 So. 2d 21, 25 (Fla. Dist. Ct. App. 2006). Florida law "does not impose upon [Plaintiff] the burden to second guess her attorney's advice or to hire a second attorney to see if such advice was proper." *Tarleton*

*v. Arnstein & Lehr*, 719 So. 2d 325, 331 (Fla. Dist. Ct. App. 1998). In any case, as mentioned, any alleged inability of Messrs. Turner and Guzman to successfully defend Plaintiff in the Underlying Litigation and Probate Proceedings was caused by Defendants' failure to ensure the Restatements were properly executed. There is simply no set of circumstances under which Plaintiff can be found to have been comparatively negligent. Defendants can present no evidence to the contrary. Hence, Plaintiff is entitled to judgment as a matter of law on Defendants' Third Affirmative Defense.

      d.   <u>Fourth Affirmative Defense</u>

In their Fourth Affirmative Defense, Defendants argue "Plaintiff's claims are barred by the lack of proximate cause and the doctrine of undue influence and duress." ECF No. 21, p.8. In order to constitute undue influence, the alleged influence "must amount to over persuasion, duress, force, coercion, or artful or fraudulent contrivances to such an extent there is a destruction of free agency and willpower of the testator." *Swiss v. Flanagan*, 329 So. 3d 199, 202 (Fla. Dist. Ct. App. 2021). Defendants allege that at the time Doran executed the Second and Third Restatements, "Doran was suffering from delusions, confusion, depression, high blood pressure, and heart disease and became aggressive and unpredictable, making him dependent on Plaintiff." ECF No. 21, p.8. This is plainly contradicted by the evidence on the record, however.

On November 5, 2019, Doran executed the Second Restatement. (SOMF, ¶ 10). Around November 7, 2019, while Doran was admitted at Mount Sinai Medical Center, his doctors found he was negative for "depression, suicidal ideas, hallucinations, memory loss and substance abuse," and was not anxious, confused, or agitated. (SOMF, ¶ 14). The Mount Sinai Medical Center doctors also found "no neurological deficit" in Doran, stating he was "alert and oriented to place, person and time." (SOMF, ¶ 15). Around December 24, 2019, while Doran was again admitted at Mount Sinai Medical Center, his doctors found that he was "awake, alert and oriented," and not depressed,

13

anxious, confused, or agitated. (SOMF, ¶ 17). On December 30, 2019, Doran executed the Third

Restatement. (SOMF, ¶ 20). Stein also testified that he did not perceive any undue influence at the

time the Third Restatement was executed:

> **Q.** And so, did it appear to you that it was—that Mr. Doran's intent was
> unequivocal—or do you have any doubt as to what he wanted changed in
> the third restatement?
> **A.** No. He was clear.
> **Q.** And that—and that intent—or that message was that Ms. Nogara received
> 100 percent of everything; correct?
> **A.** Yes.
> **Q.** Do you, at one point, thought that it was improper or that he—that he did
> not have the capacity to make that decision?
> **A.** No.
> Let me clarify that last answer. I don't know what you mean by "improper."
> **Q.** Improper, I mean was he unduly influenced, maybe.
> **A.** Not to my knowledge.
> **Q.** Was he under drugs or medication that was affecting his judgment, to your
> knowledge?
> **A.** Not to my knowledge.

ECF No. 37-2, 38:18-39:4. Stein also testified that "[i]n the several short conversations I had with

him directed only to—in regard to this trust, no, I did not have any reason to believe that he was

being unduly influenced." *Id.*, 72:19-22. Undoubtedly, Stein is the best witness regarding Doran's

mental state *at the time* the Restatements were executed. Therefore, given Stein's testimony under

oath, and the unambiguous, contemporaneous medical evidence, it is clear that Doran was mentally

sound at the time he executed the Restatements and not under Plaintiff's alleged undue influence,

contrary to the allegations in Defendants' Fourth Affirmative Defense.

Defendants also aver "Plaintiff procured the Second and Third Restatements." ECF No. 21,

p.8. However, this is contradicted by Stein's own testimony that: "Mr. Doran contacted me with

very specific instructions on what he wanted me to do, and that's what I did, which was change the

beneficiaries." ECF No. 37-2, 27:23-28:1. Stein also testified: "Doran seemed very familiar with

what he had signed. He was very familiar with what his trust said. And he gave me very specific

14

instructions on what he wanted me to do." *Id.*, 28:7-10. Accordingly, Stein's own testimony defeats Defendants' Fourth Affirmative Defense. *See Hall v. Hall*, 190 So. 3d 683, 685 (Fla. Dist. Ct. App. 2016) (challenged documents were properly executed where "they were prepared at the request of the decedent"); *Greenwood v. Flohl (In re Estate of Flohl)*, 764 So. 2d 802, 804 (Fla. Dist. Ct. App. 2000) (no undue influence where "Mr. Flohl chose the lawyer and made the appointment to revise his will [and] the lawyer prepared the will at Mr. Flohl's direction").

"Mere affection and attachment or a desire to gratify the wishes of one who is esteemed or trusted may not alone be sufficient to amount to undue influence." *Zoldan v. Zohlman*, 915 So. 2d 235, 237 (Fla. Dist. Ct. App. 2005). "Courts are not free to treat lightly a testator's intent merely because he . . . has chosen to leave his last companion his worldly goods." *Tarsagian v. Watt*, 402 So. 2d 471, 472 (Fla. Dist. Ct. App. 1981). Defendants have made—and will likely make—several unsupported allegations as to Plaintiff and Doran's relationship. Speculation, however, "does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). As evidenced by the record, there is no genuine dispute that Doran was not under the alleged undue influence of Plaintiff at the time he executed the Second and Third Restatements. Thus, Plaintiff is entitled to judgment as a matter of law on Defendants' Fourth Affirmative Defense.

e.   <u>Fifth Affirmative Defense</u>

In their Fifth Affirmative Defense, Defendants argue "Doran lacked testamentary capacity at the time he requested and executed the Second and Third Restatements, as alleged by Doran's daughter in the Underlying Litigation and Probate Proceedings." ECF No. 21, p.8. "Testamentary capacity is measured the same for both wills and trusts." *Jervis v. Tucker*, 82 So. 3d 126, 128 n.2 (Fla. Dist. Ct. App. 2012). Testamentary capacity, or sound mind, is the "ability of the testator to

15

mentally understand in a general way the nature and extent of the property to be disposed of, and the testator's relation to those who would naturally claim a substantial benefit from the will, as well as a general understanding of the practical effect of the will as executed." *Am. Red Cross v. Estate of Haynsworth*, 708 So. 2d 602, 605 (Fla. Dist. Ct. App. 1998). "[O]ld age, physical frailty, or failing memory, are not inconsistent with testamentary capacity." *Butler v. Williams*, 141 So. 2d 4, 5 (Fla. Dist. Ct. App. 1962); *Raimi v. Furlong*, 702 So. 2d 1273, 1286 (Fla. Dist. Ct. App. 1997) ("A testator may still have testamentary capacity to execute a valid will even though he may . . . have an enfeebled mind, failing memory, or vacillating judgment."). "Whether a testator had the requisite testamentary capacity is determined solely by his mental state at the time he executed the instrument." *Coppock v. Carlson*, 547 So. 2d 946, 947 (Fla. Dist. Ct. App. 1989); *Hendershaw v. Estate of Hendershaw*, 763 So. 2d 482, 483 (Fla. Dist. Ct. App. 2000) (same); *York v. Smith*, 385 So. 2d 1110, 1111 (Fla. Dist. Ct. App. 1980) ("testamentary capacity is required of the testator only when he makes his will, that is, when he signs it as his will").

Defendants can present no evidence that at the time Doran executed the Second and Third Restatements, he lacked the requisite testamentary capacity. Stein testified Doran showed no signs of mental incapacity at the time the Second Restatement was executed:

> **Q.**   And in any of these conversations on or around November 2009 [*sic*], did it appear to you that he was lucid?
> **A.**   Yes.
> **Q.**   Did he ever show any signs of mental incapacitation at that time?
> **A.**   Not during our conversations.

ECF No. 37-2, 34:1-7. Stein also testified he had no reason to believe Doran's mental capacity had declined by the time the Third Restatement was executed:

> **Q.**   So, this—did it appear to you—around a month and a half or two months later, did it appear to you that Mr. Doran had any mental incapacitation?
> **A.**   Based on our conversations, I believe he was sicker, more ill. But I had no reason to believe that his mental capacity had declined.

16

*Id.*, 36:14-19.

Defendant's Fifth Affirmative Defense does not contain any ultimate facts showing Doran lacked testamentary capacity in November and December 2019. Rather, it makes a vague reference to Doran's daughter's allegations in the Underlying Litigation and Probate Proceedings. *See* ECF No. 21, p.8. In this sense, Defendant's Fifth Affirmative Defense is legally insufficient. In any case, Plaintiff believes—based on other filings made by Defendants—that they will attempt to prove this defense with evidence that Doran was "admitted to the hospital for mental health issues in 2003, on April 15, 2017, and on April 18, 2017." ECF No. 26, p.3. However, it is well established that "if the testator had capacity at the time the will is made, his past or future condition is immaterial." *Chapman v. Campbell*, 119 So. 2d 61, 64 (Fla. Dist. Ct. App. 1960); *Miller v. Flowers*, 27 So. 2d 667, 668 (Fla. 1946) (if testatrix was lucid when she executed will, "it would be of no consequence that beforehand or afterward she had been mentally unbalanced, or even insane"). Therefore, it is undisputable that any evidence of Doran's admissions to hospital for "mental health issues" years before he executed the Restatements will be irrelevant as to whether he was competent at the time of their execution. As evidenced by the record, there is no genuine dispute Doran had testamentary capacity at the time he executed the Second and Third Restatements and Defendants can present no evidence to the contrary. Thus, Plaintiff is entitled to judgment as a matter of law on Defendants' Fifth Affirmative Defense.

## **CONCLUSION**

WHEREFORE, Plaintiff Maria Nogara respectfully requests that the Court enter an order granting this Motion for Summary Judgment; enter judgment against Defendants Lynn Law Office, P.C. f/k/a Lynn and Stein, P.C. and Joel K. Stein; and grant any and all other relief this Honorable Court deems just, proper, and equitable.

Dated: June 14, 2023

                                   Respectfully submitted,

                                   By: */s/Eduardo A. Maura*
                                        Eduardo A. Maura, Esq.
                                        Florida Bar No. 91303
                                        eduardo@ayalalawpa.com
                                        Luis F. Quesada, Esq.
                                        Florida Bar No. 1010305
                                        lquesada@ayalalawpa.com
                                        Ryan M. Sawal, Esq.
                                        Florida Bar No. 1038500
                                        rsawal@ayalalawpa.com
                                        **Ayala Law, P.A.**
                                        2490 Coral Way, Ste 401
                                        Miami, FL 33145
                                        P: (305) 570-2208
                                        F: (305) 503-7206
                                        *Counsel for Plaintiff Maria Nogara*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of it by Notice of Electronic Mail to all counsel of record.

                                   By: */s/Eduardo A. Maura*
                                        Eduardo A. Maura, Esq.
                                        Florida Bar No. 91303

18