UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-23142-CIV-SINGHAL/VALLE

MARIA NOGARA,

    Plaintiff,

v.

LYNN LAW OFFICE P.C., f/k/a
LYNN AND STEIN, P.C., *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment (DE [38]). For the reasons discussed below, Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

I.    INTRODUCTION

Plaintiff Maria Nogara ("Nogara") sues Defendants Lynn Law Office, P.C., ("the law firm") and Joel Stein ("Stein") (collectively, "Defendants") for legal malpractice. The claim arose after a Florida circuit court judge ruled that the Second and Third Trust Restatements prepared by Stein for Carl Doran ("Doran") were invalid under Florida law because they lacked subscribing witness' signatures.[1] If the Trust Restatements had been ruled valid, Nogara would have received 100% of the $8.9 million trust upon Doran's death. Instead, she received substantially less.[2] Nogara contends Defendants were negligent in not ensuring that the Second and Third Restatements were signed by subscribing witnesses.

---

[1] Doran's daughter, Amy Lucker, filed suit against Nogara in Miami, alleging the Second and Third Restatements were invalid under Florida Statute §§ 736.0403(2)(B) and 732.502.
[2] The First Trust Restatement, executed in June 2017, granted Nogara a 5% share of the Trust upon Doran's death.

Defendants deny negligence and argue that the Trust Restatements were drafted in accordance with the law of Indiana, where Stein believed Doran was domiciled when the Restatements were signed. (There is no dispute that the Second and Third Restatements were signed in Florida). Additionally, Defendants raise several affirmative defenses: (1) the Complaint fails to state a claim for negligence; (2) Nogara's lawyer was negligent in representing her in the probate court; (3) Nogara was comparatively negligent; (4) Doran was under undue influence and duress when the Second and Third Restatements were executed; and (5) Doran lacked testamentary capacity to execute the Second and Third Restatements.

Nogara seeks summary judgment on both counts of her Complaint and on Defendants' affirmative defenses.

II.     LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[3] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  An issue is "genuine" if a reasonable trier of fact, viewing the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof.  *Harrison v. Culliver*,

---

[3] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

2

746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014).  However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).  "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

When parties file cross motions for summary judgment,[4] "even where the issues presented on motions for summary judgment overlap, [the] court must consider each motion on its own merits, 'resolving all reasonable inferences against the party whose motion is under consideration.'" *City of South Miami v. DeSantis,* 508 F. Supp. 3d 1209, 1221 (S.D. Fla. 2020) (citations omitted). "Thus, where the parties disagree as to the facts, summary judgment cannot be entered unless one of the parties meets its burden of demonstrating that 'there is no dispute as to any material facts with the evidence and

---

[4] Defendants also filed a Motion for Summary Judgment. *See* (DE [62]).

3

all inferences drawn therefrom viewed in the light most favorable' to the non-moving party." *Id.* at 1222 (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)).

III. <u>DISCUSSION</u>

It is undisputed that Carl Doran spent most of his adult life in Wabash, Indiana. The Carl R. Doran Living Trust was created in 2001. In 2009 or 2010, Doran started spending time in Florida. (DE [37-1] p. 46). At first, he stayed in Florida for three months but over time he began spending more than six months a year in Florida. *Id*. at 47.

The First Restatement to the Trust was signed on December 9, 2014, in Florida. (DE [1-1]). Doran's spouse and children were the beneficiaries of the Restatement. *Id.* The Restatement declared that "the Trust instrument, its validity, construction, and any questions concerning its amendment or revocation shall be governed by the laws of the State of Indiana." *Id.*

The First Amendment to the Trust (DE [1-2]), dated January 9, 2014, granted Nogara 5% of Doran's remaining gross estate and was signed in Indiana. The Second Restatement (DE [1-3]), dated November 5, 2019, stated Doran's intent to omit his children or their issue from taking anything from the trust and granted 50% to Nogara. The Third Restatement (DE [1-4]), dated December 30, 2019, granted Nogara 100%. The Second and Third Restatements were prepared by Stein and signed in Florida.

The Second and Third Restatements both stated that the "instrument, its vitality, construction and any questions concerning its amendment or revocation shall be governed by the laws of the State of Indiana" and that the governing law provisions "shall apply even though the situs of some Trust assets or the home or principal place of the Grantors or any other beneficiary may at some time or times be elsewhere." *Id.* ¶ 7.6.2. In a later paragraph, the Second and Third Restatements stated that "[t]his instrument

4

shall be construed and administered, and the validity of the trusts hereby created shall be determined, in accordance with the laws of the state in which it is executed." *Id.* ¶ 11.2.

Doran died on February 1, 2020. His daughter, Amy Lucker, sued Nogara in Miami-Dade circuit court to invalidate the Second and Third Restatements. On March 28, 2022, the circuit judge granted summary judgment in favor of Lucker, finding the Second and Third Restatements were invalid because Doran was "a Florida domiciliary" and the Restatements were not executed with subscribing witnesses as required by Fla. Stat. §§ 736.0403(2)(B) and 732.502. (DE [1-5]). Nogara contends that Stein was negligent in not drafting the Second and Third Restatements in accordance with Florida law, and that the law firm where he worked is vicariously liable.

A.   <u>Legal Malpractice</u>

"A legal malpractice action has three elements: 1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." *L. Off. of David J. Stern, P.A. v. Sec. Nat. Servicing Corp.*, 969 So. 2d 962, 966 (Fla. 2007). A lawyer owes to the client a duty to exercise the degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise. *Home Furniture Depot, Inc. v. Entevor AB*, 753 So. 2d 653, 655 (Fla. 4th DCA 2000).

The first element is established because Nogara is an intended third-party beneficiary of Stein's employment by Doran. "Intended third-party beneficiaries of testamentary documents have standing to bring an action for legal malpractice if they are able to show that the testator's intent as expressed in the will is frustrated by the negligence of the testator's attorney." *Ellerson v. Moriarty,* 331 So. 3d 767, 770 (Fla. 2nd DCA 2021) (cleaned up; quotations omitted). Here, Nogara was an intended third-party

beneficiary of the Second and Third Restatements[5] and, due to Defendants' alleged negligence, received far less from the Trust than Doran intended. Nogara, therefore, has standing to pursue this legal malpractice claim.

The next element of legal malpractice is whether the attorney neglected a reasonable duty. "A lawyer owes to the client a duty to exercise the degree of reasonable knowledge and skill which lawyers of ordinary ability and skill possess and exercise." *Home Furniture Depot, Inc.,* 753 So. 2d at 655. According to Nogara, Stein breached this duty by not drafting trust documents that complied with Florida law. Nogara's motion states that Doran resided in Miami Beach at the time of his death. (DE [37] ¶ 25). Thus, Nogara concludes that Stein should have drafted the Trust Restatements to comply with Florida law.

Defendants argue that domicile and residence are not synonymous, and that Stein acted reasonably in concluding that Doran was domiciled in Wabash, Indiana. Defendants assert the following facts: (1) Stein was licensed in Indiana and knew Doran to have been a resident of Wabash, Indiana for decades; (2) Stein represented Doran in legal proceedings in Indiana, including his 2019 divorce; (3) Doran stated that he had an Indiana driver's license and car registration; (4) During his representation of Doran, Stein learned that Doran's financial assets were managed by an Edward Jones office in Wabash, Indiana; (5) Stein understood that Doran owned real property and paid property taxes in Indiana; (6) Doran maintained a mailing address in Indiana; and (7) Doran intended to purchase property in Indiana following his divorce. (DE [49]). Based on these

---

[5] The Court makes no finding here on Defendants' affirmative defense that Doran was under undue influence or lacked testamentary capacity when he signed the Second and Third Restatements.

facts, Defendants assert that it was reasonable for Stein to draft the Restatements under Indiana law.[6]

The Court agrees that Doran's residence in Florida, by itself, does not establish he was domiciled in Florida.

> A person may have several temporary local residences but can have only one legal residence. A legal residence or "domicile" is the place where a person has fixed an abode with the present intention of making it his or her permanent home. Once established, a domicile continues until it is superseded by a new one. A domicile is presumed to continue, and the burden of proof ordinarily rests on the party asserting the abandonment of one domicile to demonstrate the acquisition of another.

*Snyder v. McLeod,* 971 So. 2d 166, 169–70 (Fla. 5th DCA 2007). "A change of residence is accomplished and becomes effective when there is a good-faith intention to establish it, coupled with an actual physical move to the new residence, as evidenced by positive overt acts." *Id.* "When assessing a person's domicile—specifically, his or her subjective intent to remain in a place—courts consider a series of non-exclusive, objective factors, including: the location of real and personal property, business ownership, employment records, bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and other similar indications. *Bal Harbour Shops, LLC v. Saks Fifth Ave. LLC,* 2022 WL 17733824, at *3 (S.D. Fla. Dec. 9, 2022) (citing *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021). "No single factor is conclusive; rather, the Court looks to the 'totality of the evidence.'" *Id.* (quoting *Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001)).

---

[6] Nogara submitted evidence in opposition to Defendants' Statement of Material Facts. *See* Reply Statement of Facts (DE [53]). But the Court "has no obligation to consider … new argument and evidence attached … [to a] … reply brief." *Camayd v. United Auto Credit Corp.,* 2019 WL 112608, at *2 (S.D. Fla. Jan. 3, 2019).

Significantly, this Court need not determine whether Doran was domiciled in Indiana or Florida. The question in this motion is whether Nogara has established undisputed facts that Stein knew or should have known that Doran was domiciled in Florida so that drafting the Restatements in accordance with Indiana law was a breach of duty. Construing the evidence before the Court in the light most favorable to the nonmoving parties and drawing all reasonable inferences in their favor, the record before the Court on Nogara's Motion for Summary Judgment does not meet that standard.

Further, Nogara's legal malpractice claims are not supported by expert testimony. As a panel of the Eleventh Circuit has noted, "[o]ur review of Florida case law indicates that a legal malpractice plaintiff must present expert testimony to establish the appropriate standard of care (and breach thereof) unless the lawyer's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge." *Evans v. McDonald,* 313 Fed. Appx. 256, 258 (11th Cir. 2009). As already noted, the issue of whether Doran was domiciled in Florida or Indiana is not decisively determined. Plaintiff has produced no expert testimony on whether the appropriate standard of care required Stein to do more than he did to determine Doran's domicile. There is no basis in the record to grant summary judgment to Nogara on her legal malpractice claims.

B.   Vicarious Liability

Nogara seeks to impose liability on the law firm on a theory of vicarious liability. But "a plaintiff may not hold an employer liable until the employee is found to be liable." *Tsuji v. H. Bart Fleet,* 326 So. 3d 143, 148 (Fla. 3rd DCA 2021). Because Nogara is not entitled to summary judgment on Count I of the Complaint, summary judgment cannot be entered against the law firm.

C. <u>Affirmative Defenses</u>

Nogara seeks summary judgment on each of Defendants' affirmative defenses.

1. <u>Failure to State a Cause of Action</u>

Defendants' first affirmative defense asserts that Nogara fails to state a cause of action for negligence. Nogara argues that this defense is insufficient as a matter of law. The Court disagrees. As discussed above, Defendants raise a genuine dispute of fact as to whether Stein was negligent in concluding that Doran was domiciled in Indiana at the time the Restatements were drafted. If Stein reasonably concluded that Doran was domiciled in Indiana, Nogara's negligence claim fails, and the Complaint fails to state a cause of action. Further, there is no testimony in the record to establish that Stein departed from the standard of care in investigating Doran's domicile.

"Florida case law indicates that a legal malpractice plaintiff must present expert testimony to establish the appropriate standard of care (and breach thereof) unless the lawyer's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge." *Evans,* 313 Fed. Appx. at 258. Based on the facts known to Stein at the time the Restatements were drafted, the Court cannot say that Stein's "lack of care and skill" was so obvious that Nogara should prevail on summary judgment.

Next, in her reply memorandum, Nogara references the Petition for Probate of Will and For Letters Testamentary (DE [53-3]) filed by Stein in the Miami-Dade County probate court, swearing that at the time of Doran's death on February 1, 2020, he was domiciled in Miami-Dade County, Florida. From this Nogara argues that Stein was negligent drafting the December 2019 Restatement. As compelling as this argument may be, the Court cannot consider it at this time.

> Local Rule 7.1(c) provides that a reply memorandum 'shall be strictly limited to rebuttal of matters raised in the memorandum

9

> in opposition without re-argument of matters covered in the movant's initial memorandum of law.' S.D. Fla. L.R. 7.1(c). 'A reply memorandum *may not raise new arguments or evidence*, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence.'

*Equal Emp. Opportunity Comm'n v. Univ. of Miami,* 2021 WL 2349490, at *1 (S.D. Fla. June 9, 2021) (emphasis added) (quoting *Baltzer v. Midland Credit Mgmt., Inc.,* 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014)).

Finally, Nogara cites what she claims are conflicting clauses in the trust Restatements. In Section 7.6.2, the Restatements provide that the laws of Indiana govern:

> This Trust instrument, its validity, construction and any questions concerning its amendment or revocation shall be governed by the laws of the State of Indiana. The administration of all trust estates created hereunder is to be governed in all respects by the laws of the state in which the Trust is then being administered (based on the location of the principal office of the Trustee then having custody of that Trust's principal assets and records) which state's courts shall have nonexclusive jurisdiction over the administration of that Trust with respect to any period during which it was being administered in that state. The foregoing shall apply even though the situs of some Trust assets or the home or principal place of the Grantors or any other beneficiary may at some time or times be elsewhere.

(DE 1-4]). Section 11.2 governs "Applicable Law" and states "[t]his instrument shall be construed and administered, and the validity of the trusts hereby created shall be determined, in accordance with the laws of the state in which it is executed." *Id.* Nogara argues that because the Restatements were signed in Florida, this state's law applies, not Indiana's, and Stein was negligent in not including witness' signature lines.

The issue is not as clear as Nogara claims. She cites *Dennis v. Kline,* 120 So. 3d 11, 21 (Fla. 4th DCA 2013) for the proposition that "where a trust is created and executed in Florida, the law presumes that the settlor expected Florida law to apply…." *Id.* But the *Dennis* court also explained that there can be exceptions to this rule. A presumption that

10

Florida law applies exists "[a]bsent any provision to the contrary." *Id.* The Restatements contain a contrary provision: the laws of Indiana apply.

Paragraphs 7.6.2 and 11.2 are not facially in conflict with each other. The problem arises only because the Restatements were not signed in Indiana. When faced with an inconsistency like this, the court must try to reconcile the conflicting provisions or, if reconciliation is not possible, give a "reasonable interpretation." *Kaplan v. Bayer,* 782 So. 2d 417, 419 (Fla. 2nd DCA 2001). Interpretation is a question of law. *Id.*

According to the Florida Trust Code, the settlor's domicile determines the governing law. Section 736.0403(1) states that "[a] trust not created by will is validly created if the creation of the trust complies with the law of the jurisdiction in which the trust instrument was executed or the law of the jurisdiction in which, at the time of creation, the settlor was domiciled." And if a trust contains "testamentary aspects," the trust must meet the formalities required for the execution of a will in this state, if it was "executed by a settlor who is a domiciliary of this state [Florida] at the time of execution." Fla. Stat. § 736.0403(2)(b). So too, this Court concludes that the validity of the Restatements depends on Doran's domicile at the time they were executed. And as discussed above, Defendants have presented a genuine dispute of fact on the issue of Doran's domicile.

For these reasons, summary judgment will be denied on Defendants' First Affirmative Defense.

    2.    <u>Negligence of Nogara's attorneys</u>

Defendants' Second Affirmative Defense contends that Nogara's damages were solely or partially caused by the attorneys who represented Nogara in the state court proceeding. Defendants argue these attorneys were negligent by failing to argue that Indiana law applied and by failing to ensure that the litigation and probate proceedings

11

were adjudicated by Indiana courts. Defendants also argue the lawyers were negligent because they did not file a response to Lucker's motion for summary judgment.

Nogara moves for summary judgment on this affirmative defense. Nogara argues, correctly, that in Florida "once a negligent act occurs, the actor will be liable for injury flowing therefrom, unless an act unforeseeable to him and independent of his negligence intervenes to cause the loss." *Mitrani v. Druckman,* 576 So. 2d 406, 408 (Fla. 3rd DCA 1991). The separate act "is an intervening cause so as to cut off a defendant's liability only when it is 'completely independent of, and not in any way set in motion by, the tortfeasor's negligence.'" *Zinn v. United States,* 835 F. Supp. 2d 1280, 1318 (S.D. Fla. 2011) (quoting *Lindsey v. Bell South Telecomm., Inc.,* 943 So. 2d 963, 965 (Fla. 4th DCA 2006)).

The lawyers' representation of Nogara was not an intervening and independent cause of loss separate from Stein's alleged negligence. The need to represent Nogara flowed directly from Stein's drafting of the Restatements. Because the lawyers' alleged negligence was not unforeseeable and independent of Stein's alleged negligence, the Second Affirmative Defense fails as a matter of law.

   3. <u>Nogara's comparative negligence</u>

Defendants' Third Affirmative Defense states that Nogara's damages were caused by her own comparative negligence in failing to properly assert all legal arguments available to her in the state court litigation over the validity of the Restatements. Nogara argues that she was entitled to rely on the advice of her attorneys and cannot be charged with negligence. Defendants counter that Nogara failed to take appropriate action by not retaining an Indiana lawyer and moving to litigate the case in Indiana and by "failing to

appropriately verify the competency of the attorneys representing her in the Florida state trial court proceedings."

"Comparative negligence is an affirmative defense; thus, the party asserting the defense bears the burden of proving that the negligence of the other party was a cause of the accident." *Bongiorno v. Americorp, Inc.,* 159 So. 3d 1027, 1029 (Fla. 5th DCA 2015). The standard elements of negligence must be established. *Id.* These are "(1) a duty to conform to a certain standard of conduct; (2) a breach of the duty; (3) proximate cause; and (4) damages." *Id.* (citation omitted).

Defendants argue that Nogara breached her duty to properly respond to Lucker's challenge of the Restatements by failing to engage an Indiana attorney and by failing to investigate the competency of the Florida attorneys she hired. The law simply does not impose such a burden on a litigant. Nogara was sued in Florida and retained Florida counsel to defend her. "A client cannot be found to be comparatively negligent for relying on an attorney's erroneous legal advice or for failing to correct errors of the attorney which involve the exercise of professional expertise." *Tarleton v. Arnstein & Lehr,* 719 So. 2d 325, 331 (Fla. 4th DCA 1998). Nor can she be found negligent for failing to investigate whether her lawyers' advice was proper. *Id.* For this reason, the Third Affirmative Defense fails as a matter of law.

### 4. Undue Influence

Defendants' Fourth Affirmative Defense states that Nogara's claims are barred by the lack of proximate cause and the doctrine of undue influence and duress:

> Defendants assert that Plaintiff's claims are barred by the lack of proximate cause and the doctrine of undue influence and duress, as alleged by Doran's daughter in the Underlying Litigation and Probate Proceedings, which rendered the Second and Third Restatements unenforceable so Defendants' acts were not the causes of Plaintiff's damages. At the time Doran executed the

13

> Second and Third Restatements, Doran was suffering from delusions, confusion, depression, high blood pressure, and heart disease and became aggressive and unpredictable, making him dependent on Plaintiff. As a result of Doran's health conditions, he did not understand or comprehend his actions, nor did he understand or comprehend the effect that the Second and Third Restatements would have upon Plaintiff's ability to seize control of his assets. Plaintiff procured the Second and Third Restatements by exercising undue influence over Doran while Doran was in a mentally and physically weakened state, which amounted to over-persuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that Doran's free-agency or willpower were destroyed. Plaintiff controlled Doran's mind to such a degree that the Second and Third Restatements were products of the Plaintiff's mind instead of Doran's mind. Doran would not have voluntarily agreed to executing the Second and Third Restatements had Plaintiff not exercised undue influence over him.

(DE [21]).

"When a will is challenged on the grounds of undue influence, the influence must amount to over-persuasion, duress, force, coercion, or artful or fraudulent contrivances to such an extent that there is a destruction of free agency and willpower of the testator." *Levin v. Levin,* 60 So. 3d 1116, 1118 (Fla. 4th DCA 2011) (quoting *Raimi v. Furlong,* 702 So.2d 1273, 1287 (Fla. 3d DCA 1997)). A presumption of undue influence arises if the challenger shows that the beneficiary "(1) was a substantial beneficiary (2) who occupied a confidential relationship and (3) was active in procuring the will and trust." *Id.* (citing *In re Estate of Carpenter,* 253 So. 2d 697, 701 (Fla. 1971). In *Carpenter,* the Florida supreme court set out non-exclusive factors for the courts to evaluate when considering a claim of undue influence:

> (a) the presence of the beneficiary at the execution of the will; (b) presence of the beneficiary on those occasions when the testator expressed a desire to make a will; (c) recommendation by the beneficiary of an attorney to draw the will; (d) knowledge of the contents of the will by the beneficiary prior to execution; (e) giving of instructions on preparation of the will by the beneficiary to the attorney drawing the will; (f) securing of witnesses to the will by

14

>the beneficiary; and (g) safekeeping of the will by the beneficiary
>subsequent to execution.

*In re Carpenter's Estate,* 253 So. 2d at 702.

Although Defendants allege undue influence, Defendants have not introduced any evidence from which a jury could conclude that Nogara engaged in active procurement/undue influence over the Restatements. The evidence in the record shows that Doran contacted Stein, with whom he had a decades-long personal relationship, to draft the Restatements. Stein represented Doran in 2019 when Doran's wife of 54 years filed for divorce. (DE [49]). The evidence shows that Doran was in poor health during the last few months of his life (when the Restatements were drafted) but there is no evidence of active procurement/undue influence by Nogara. *See Newman v. Brecher,* 887 So. 2d 384, 386 (Fla. 4th DCA 2004) (affirming directed verdict where the evidence showed "factual disputes as to whether [the decedent] was adequately cared for or whether the [beneficiaries] liked each other, but there were no factual issues relative to the procurement of the will/trust").  Indeed, Stein himself testified that Doran's intent in drafting the Restatements was "unequivocal" and he "did not have any reason be believe that he was being unduly influenced." (DE [37-2]).

Doran was suffering from health issues when the Restatements were drafted and had cut off contact with his family. (DE [49]). But, again, there is no evidence that Nogara engaged in active procurement/undue influence. "Courts are not free to disregard a testator's intent merely because he has chosen to leave his last companion his worldly goods to the disappointment of his children. Unless the evidence shows that the testator has been precluded from freely exercising his will to dispose of his money and his possessions as he chooses, his wishes must be respected." *In re Estate of Flohl,* 764 So. 2d 802, 8804 (Fla. 2nd DCA 2000). "[M]ere suspicion and conjecture cannot constitute a

basis on which a will may be declared invalid on the ground of undue influence." *Id.* (quoting *In re Carpenter's Estate,* 253 So. 2d at 704); *see also Tarsagian v. Watt,* 402 So. 2d 471, 472 (Fla. 3rd DCA 1981) ("Courts are not free to treat lightly a testator's intent merely because he has entered into a December marriage….It is his money and his goods to do with as he chooses … and unless the evidence shows that he has been precluded from freely exercising that choice, his wishes are to be respected.").

Because the record contains no evidence of undue influence by Nogara, Defendants' Fourth Affirmative Defense fails as a matter of law.

        5.        <u>Lack of Testamentary Capacity</u>

Defendants' Fifth Affirmative Defense states that Nogara's claims are barred because Doran lacked testamentary capacity to change his trust in November and December 2019. "The burden of invalidating a will because of lack of testamentary capacity is a heavy one and must be sustained by a preponderance of the evidence." *Hendershaw v. Estate of Hendershaw,* 763 So. 2d 482, 483 (Fla. 4th DCA 2000). "Testamentary capacity is determined only by the testator's mental capacity at the time he executed his will." *Id.* Defendants submit medical records from 2003 and 2017 that show Doran was depressed, confused, and disoriented. These records are not sufficient to establish Doran's testamentary capacity in 2019.

Defendants note that Doran was in poor health when he executed the Second and Third Restatements. Nevertheless, Stein testified that during his conversations with Doran in late 2019, Doran did not show any signs of mental incapacitation. (DE [37-2]). Stein testified, "Based on our conversations, I believe he was sicker, more ill. But I had no reason to believe that his mental capacity had declined." *Id.* Defendants note that Doran was hospitalized when he signed the Third Restatement. This does not establish

a lack of testamentary capacity. "A sick person may make a valid will in his last illness or even when in a dying condition." *In re Wilmott's Estate,* 66 So. 2d 465, 467 (Fla. 1953). Unless there is a showing that the testator was "unable to comprehend and understand the nature of the undertaking in which he is engaged when he attempts to make his will, it cannot be said as a matter of law that testamentary capacity is shown to be so lacking as to render a will made during one's affliction and last illness invalid for lack of testamentary capacity." *Id.* (quoting *Smith v. Clements,* 154 So. 520, 521 (Fla. 1934)).

Defendants have not presented any evidence from which a jury could find a lack of testamentary capacity. To the extent Defendants note that Doran was placed in non-violent restraints on December 30, 2019, the records show he refused to stay in bed. (DE [51-12]). This is not evidence of lack of testamentary capacity. Stein himself testified that he was not aware of any such evidence. (DE [37-2]). For this reason, Defendants' Fifth Affirmative Defense fails as a matter of law.

IV. <u>CONCLUSION</u>

For the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (DE [38]) is **GRANTED IN PART AND DENIED IN PART.** Summary judgment is granted in favor of Plaintiff on Defendants' Second, Third, Fourth, and Fifth Affirmative Defenses. Summary judgment is denied as to the First Affirmative Defense and Counts I and II of Plaintiff's Complaint.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 20th day of November 2023.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF